NICHOLAS J. GEROLD & others *vs.* COSMOPOLITAN TRUST COMPANY.

Suffolk.    March 5, 1923. — May 25, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & PIERCE, JJ.

*Trust Company*, Corporate powers, In liquidation. *Damages*, For breach of contract.

A trust company which has a very large foreign business, numbers among its depositors a great number of foreign born persons, extensively deals in foreign exchange and so advertises, has delegated to certain officers the sole duty of superintending its foreign business and of attending to the wants and needs of its resident depositors and has personal representatives in Europe to secure and to conserve foreign business, is acting within the scope of its corporate powers under G. L. c. 172, § 33, in purchasing five million Austrian kronen of a firm in the city of New York.

Within forty-eight hours after the commissioner of banks took possession of the property and business of a certain trust company on September 25, 1920, that fact became known to a firm in the city of New York with whom the trust company had made a contract to purchase from them five million Austrian kronen. On December 29, 1920, the trust company then being in process of liquidation, the liquidating agent notified the New York firm to cancel the order for kronen. Ten days later the firm sold the kronen. The value of the kronen continuously decreased from September 25 to the time of such sale. In an action by the New York firm against the trust company, it was *held*, that damages to be recovered were the difference between the purchase price named in the contract and the value of the kronen on the date when the commissioner took possession.

CONTRACT by individuals doing business in New York City under the name and style, Josephthal and Company, for damages resulting from a breach of an agreement by the defendant to purchase from the plaintiffs five million Austrian kronen. Writ dated April 28, 1921.

In the Superior Court, the action was heard upon an agreed statement of facts by *McLaughlin*, J., without a jury. Material facts are described in the opinion. The judge found for the plaintiff in the sum of $22,330, and reported the action to this court for determination, with the stipulation that, if the plaintiff was not entitled to recover, then judg-

ment was to be entered for the defendant; if the plaintiff was entitled to recover and damages were to be determined as of September 25, 1920, then judgment was to be entered for the plaintiff on the finding, and, if the plaintiff was entitled to recover and damages were to be determined as of January 8, 1921, then judgment was to be entered for the plaintiff in the sum of $31,000.

*D. L. Smith*, for the defendant.

*H. F. Hathaway*, for the plaintiffs.

DECOURCY, J.   On or about July 1, 1920, the defendant made a contract with the plaintiffs to purchase of the plaintiff, five million Austrian kronen at eighty-three cents per hundred kronen, to be delivered during the month of December, 1920, on demand of the defendant.   The commissioner of banks took possession of the trust company on September 25, 1920; and the plaintiffs had knowledge of that fact within forty-eight hours.   The liquidating agent, on behalf of the commissioner, on December 29, 1920, in reply to a letter of the plaintiffs, notified them to cancel the order for kronen.   On January 8, 1921, the plaintiffs sold the kronen contracted for, and received therefor $10,500.   The contract price for the same on July 1, 1920, was $41,500: their value at the current rate of exchange on September 25, 1920, was $21,500: and on December 31, 1920, was $12,250.   This action was brought to recover the difference between the amount realized and the contract price, viz. $31,000.   The trial judge found for the plaintiffs in the sum of $22,330, determining the damages as of September 25, 1920; and reported the case.

1. As to the defence of *ultra vires*: Under G. L. c. 172, § 33, a Massachusetts trust company may " also invest its money or credits, whether capital or general deposits, in the stocks, bonds or other evidences of indebtedness of corporations or of governments, both foreign and domestic."   The agreed facts recite: " The Kronen sold by the plaintiff and purchased by the defendant is the unit of currency of the Austrian government.   It was and is represented by the bank notes of the Austro-Hungarian Bank at Vienna, made payable on demand at its principal offices in legal currency.

The issuance of said bank notes is authorized and controlled by the Austrian Government in the same manner as the provision which enables National Banks of the United States to issue currency." The investment in question seems to come within the statutory provision.  Further, in *Cosmopolitan Trust Co.* v. *Ciarla*, 239 Mass. 32, and *Federal Trust Co.* v. *State Bank*, 241 Mass. 572, it was recognized that a trust company may legally deal in foreign currency. In the latter case the contract was for the purchase of Russian roubles, to be delivered within six or eight weeks from  date, at stated prices and denominations; and the trust company recovered damages for the defendant's failure to deliver them.   It is true that in that case there was evidence tending to show that banks in Boston usually and generally bought and sold and dealt in foreign currency, and hence that the selling of foreign currency was part of " the usual business of banking " within R. L. c. 115, § 30, dealing with State banks.   The right of the trust company to purchase such currency apparently was not questioned.   In the present record there were facts from which presumably the trial judge drew an inference that it was customary for trust companies to deal in foreign currency, in the usual course of banking business.   It appeared that this trust  company enjoyed a very large foreign business; numbered among its depositors a great number of foreign born persons; extensively dealt in foreign exchange, and so advertised; had delegated officers whose sole duty was to superintend its foreign business and attend to the wants and needs of its resident foreign depositors and customers; and had personal representatives in Europe to secure and conserve foreign business.   On this record we cannot say as matter of law that the contract under consideration was beyond the lawful power of the defendant.

2. We are of opinion that the judge rightly computed the damages by allowing the plaintiffs the difference between the contract price and the value of Austrian kronen at the current rate of exchange on September 25, 1920, when the bank commissioner took possession.  It may be that the same rule would not apply if the trust company had sub-

sequently resumed its orderly business administration. But on that date the defendant's right to control its property or carry on its business was ended by legal authority; and its affairs have since been in process of liquidation. As a practical matter, the purposes of the statute will be best accomplished by adjusting the rights of parties as of the date when the commissioner took possession of the trust company; and that rule has been adopted in other cases. *American Express Co.* v. *Cosmopolitan Trust Co.* 239 Mass. 249. *Cosmopolitan Trust Co.* v. *Ciarla, supra. Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478.

In accordance with the report judgment is to be entered for the plaintiffs on the finding.

*So ordered.*