SALVATORE CORSINO *vs.* HANOVER TRUST COMPANY
& another.

Suffolk.    March 25, 1925. — May 23, 1925.

Present: RUGG, C.J., CROSBY, PIERCE, & CARROLL, JJ.

*Trust Company,* Foreign exchange. *Contract,* Validity. *Banks and Banking. Evidence,* Relevancy. *Corporation,* Ultra vires.

A trust company organized under the laws of this Commonwealth is authorized to deal in foreign exchange and therefore in the carrying on of its banking business may invest its money in Italian lire and may make agreements with its customers on the payment of stipulated sums to deliver to them lire or United States dollars at a certain future date, and may issue therefor receipts stating in substance that it has on hand with its correspondent in Genoa, Italy, lire of the amounts purchased and that "upon payment or surrender of . . . [the] receipt . . . the same . . . [would] be paid . . . either by check for the full amount or by United States dollars."

At the trial of a cross suit in equity by a trust company for damages resulting from a failure by a customer to fulfil the requirements of a contract of the character above described, it was *held,* that

(1) Evidence tending to show that it was a recognized part of the business of banking as conducted in Boston, for banks and trust companies to buy, sell and deliver any foreign exchange, including lire, for immediate and future delivery, properly was admitted;

(2) The mere fact, that the trust company did not have on hand at all times sufficient lire to cover its outstanding contracts, did not make the transaction illegal;

(3) It could not be said as a matter of law that the transaction was a wagering contract nor that the trust company through the means of the contract was making short sales;

(4) Under such a contract, where the purchaser might not demand lire but might demand "United States dollars," the trust company was not required to have on hand at all times sufficient lire to meet every possible demand in the future:

(5) The contract was not illegal.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on June 19, 1922, and afterwards amended, to establish claims against the defendant trust company, in liquidation, for payments made on account of contracts to purchase Italian lire.

The defendant filed cross bills for balances alleged to be due the trust company under the contracts. The suit was

referred to a master. Material findings by the master are described in the opinion. The suit was heard on the master's report by *Sanderson*, J. By his order there were entered an interlocutory decree overruling exceptions by the parties to the master's report and confirming the report, excepting in a matter not now material; and a final decree directing the plaintiff to pay to the defendant $9,082.14. The plaintiff appealed.

*H. Bergson*, for the plaintiff.

*F. H. Smith, Jr.*, for the defendants.

CARROLL, J. This is a suit to establish a claim against the Hanover Trust Company, in liquidation, for payments made by the plaintiff on contracts to buy Italian lire of the Hanover Trust Company, hereinafter referred to as the trust company. The defendants by a cross bill seek to recover the balance due under the contract. The plaintiff contends that the trust company had no authority to make the contracts with the plaintiff, and could not invest its funds in foreign currency, and had no "right to make 'short' sales of such currency."

The master to whom the case was referred found that the plaintiff, an importer, before making the contracts in question, was a depositor in the trust company and at one time purchased fifty thousand lire from the trust company and was given a draft on Credito Italiano in Genoa, the trust company's depositary for lire in Italy; that this draft the plaintiff took with him to Italy and used in his business; that subsequent to this transaction, he agreed to purchase two hundred thousand lire for a total price of $23,798.86; that in November, 1919, the plaintiff signed a paper enumerating the contracts already made and stipulating that the balance was to be paid on or before February 21, 1920, with interest at six per cent; and that when a purchaser of lire paid what was due under his contract, if the customer did not ask for a draft, it was customary for the trust company to issue a receipt stating that it had on hand with its correspondent in Genoa, lire of the amount purchased, and that "upon payment or surrender of . . . [the] receipt . . . the same . . . [would] be paid . . . either by check for the full

amount or by United States dollars." The master further found that there was due the trust company $8,102.14, if the plaintiff was to be credited with the value of the lire on February 21, 1920, when payment was due; that if he was to be credited as of August 11, 1920, when the Commonwealth took possession, then there was due the trust company $9,082.14; that "lire is the national currency of the Kingdom of Italy"; that it was the custom of trust companies in Boston and vicinity, to sell lire for future delivery, and payments were demanded on such contracts, "based upon the credit risk of the buyer or customer."

We consider it settled law that a trust company organized under the laws of this Commonwealth is authorized to deal in foreign exchange, and may invest its funds in foreign currency in carrying on its banking business in the manner shown in this record. *Cosmopolitan Trust Co.* v. *Ciarla,* 239 Mass. 32. *Federal Trust Co.* v. *State Bank,* 241 Mass. 572. *Gerold* v. *Cosmopolitan Trust Co.* 245 Mass. 259. The evidence admitted by the master, subject to the plaintiff's objection, to show that it was a recognized part of the business of banking as conducted in Boston, for banks and trust companies to buy, sell and deliver any foreign exchange, including lire, for immediate and future delivery, was properly admitted. *Federal Trust Co.* v. *State Bank, supra,* page 574. *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 598.

The fact that the trust company did not have at all times sufficient lire to cover its outstanding contracts does not make the transaction illegal. The contract of the plaintiff with the trust company had reference to lire to be delivered in the future. He made only a partial payment. By the agreement of November 21, 1919, he was to pay for all the lire purchased on or before February 21, 1920. The trust company had a balance, with its bankers in Genoa when the first contract was made, large enough to cover the amount contracted for; and during the entire period from May 14, 1919, to August 11, 1920, when the commissioner took charge, had to its credit more than enough lire to cover the contracts with the plaintiff, and was at all times ready and willing to make delivery of the lire upon the payment of the price, in ac-

cordance with the contracts. The fact that it did not always have lire equivalent in amount to cover its outstanding obligations, is not material. No illegality is shown in its contract with the plaintiff. It is not shown that the transaction was a wagering contract, or that the parties were gambling on the market. Nor was the trust company making short sales. The findings of the master do not sustain these contentions of the plaintiff. The receipt gave to the purchaser of lire the right, at his election, to be paid in lire or "United States dollars" at the rate of exchange on the day of delivery. Under such a contract, where the purchaser might not demand lire, but might demand "United States dollars," the trust company was not required to have on hand at all times sufficient lire to meet every possible demand in the future. *Cosmopolitan Trust Co.* v. *Ciarla, supra.*

The decree was entered properly for the defendant, based on the value of the lire August 11, 1920, the date of the possession by the commissioner. *Gerold* v. *Cosmopolitan Trust Co.* 245 Mass. 259, and cases cited.

*Decree affirmed with costs.*