ROBERT GOODLESS & others, administrators, vs. JOSEPH B. MARSHALL & others.

Hampden.    April 7, 1953. — May 7, 1953.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Fraudulent Conveyance.    Equity Pleading and Practice*, Decree.

The entry of two so called final decrees in a suit in equity was irregular, but as each decree was a final adjudication of a separable controversy this court on appeal from the earlier decree treated both decrees as constituting a single final decree.   [217]

In a suit in equity by administrators of the estate of a decedent to establish an indebtedness to it of certain defendants and to reach and apply to the payment thereof assets allegedly transferred fraudulently into the hands of other defendants, evidence reported, documentary and oral, did not show that such transfers were fraudulent as to creditors, and a decree dismissing the bill as to the other defendants was affirmed. [218–219]

BILL IN EQUITY, filed in the Superior Court on June 19, 1951.

The plaintiffs appealed from a final decree entered on March 21, 1952, after hearing by *O'Brien*, J.

*Gerson Askinas*, for the plaintiffs.

*Alfred Bettigole*, for the defendants Leers and others.

WILLIAMS, J.    This is a bill in equity by the administrators of the estate of Sara Terney, late of Springfield, to establish the indebtedness of Joseph B. Marshall, Hannah Marshall, Ellis Marshall, and City Tool & Die Co., Inc., to the estate, and to reach and apply to the payment of such indebtedness the assets of the principal defendants in the hands of Robert S. Leers, Muriel M. Leers, Louis H. B. Kaplan, Bay State Plastic Mold, Inc., and M. & L. Plastics, Inc.

It is alleged in the bill that the plaintiffs hold a promissory note for $80,000 payable to the order of the decedent one year after date and "executed and delivered" February 28,

1948, by Joseph B. Marshall, Hannah Marshall, and City Tool & Die Co., Inc., and also an unpaid check dated April 23, 1950, for $720 drawn on the Union Trust Company by Ellis Marshall, payable to the decedent. Other allegations are summarized as follows.

Joseph B. Marshall, being "deeply indebted and in order to avoid creditors attaching his assets," on or before September 14, 1945, organized a machine and tool business under the name of City Tool & Die Co. and "placed" the business in the name of his son, Ellis Marshall. On or about August 1, 1946, Joseph B. Marshall and Ellis Marshall conveyed the property of City Tool & Die Co. to City Tool & Die Co., Inc., a corporation which they had organized and of which all of the corporate shares, 120 in number, were issued to Ellis Marshall. On or about August 9, 1948, City Tool & Die Co., Inc., gave a mortgage of its machinery and equipment to Louis H. B. Kaplan without "any or fair consideration." On February 24, 1949, Bay State Plastic Mold, Inc., was organized by Ellis Marshall and Hannah Marshall, all shares of the stock, 60 in number, being issued to Ellis Marshall. On February 26, 1949, Kaplan foreclosed the mortgage of City Tool & Die Co., Inc., "took title" to the mortgaged property, and on the same day transferred this property to Bay State Plastic Mold, Inc. On November 1, 1946, Joseph B. Marshall, Hannah Marshall, and Robert S. Leers organized M. & L. Plastics, Inc., and caused all of the stock consisting of 500 shares to be issued to Hannah Marshall, the sole purpose of the organizers being to place all the assets of Joseph B. Marshall, Hannah Marshall, and Ellis Marshall beyond the power of the plaintiffs to attach. Hannah Marshall owned the land and buildings at 12 Elwood Drive, Springfield, and on October 11, 1947, conveyed the property to Lottie J. Joffee. On or about January 30, 1951, Lottie J. Joffee conveyed the property to Robert S. Leers and Muriel M. Leers as tenants by the entirety. Both of these transfers were without consideration. All of the above transactions were entered into by the defendants concerned with

intent to hinder, delay, and defraud the creditors of the principal defendants and particularly the plaintiffs' intestate. Joseph B. Marshall and Hannah Marshall are the "true" owners of 12 Elwood Drive, Joseph B. Marshall and Ellis Marshall are the present owners of the machinery and equipment taken by Louis H. B. Kaplan on foreclosure, and Joseph B. Marshall and Hannah Marshall are the owners of the assets of M. & L. Plastics, Inc.

Joseph B. Marshall, Hannah Marshall, Ellis Marshall, and City Tool & Die Co., Inc., did not appear or answer.

The judge found the following "material" facts. The plaintiffs are the holders of a note and check as alleged in the bill, all the signatures on the note having been inscribed by Joseph B. Marshall. Joseph B. Marshall was a professional gambler known to be such by the decedent. He borrowed from her $80,000 which "was to be used in placing wagers on horse races, and in accepting bets on horse races, and . . . the profit therefrom, if any, was to be shared equally" by them. The giving of the note was kept secret and none of the other defendants knew of its existence until after the death of the decedent. No part of the money received from her by Joseph B. Marshall was "turned over to City Tool & Die Co., Inc.," or to Hannah Marshall. A mortgage of $50,000 on all the tools and equipment of City Tool & Die Co., Inc., was given to Louis H. B. Kaplan on August 9, 1948. Its purpose was to secure loans which had been made by Kaplan totaling more than the face of the mortgage. Kaplan acted in good faith and there was no intent to defraud, delay, or defeat the creditors of the mortgagor. Bay State Plastic Mold, Inc., was organized on February 24, 1949, the Kaplan mortgage was foreclosed on February 26, 1949, and sometime during the same month Kaplan transferred the foreclosed property to Bay State Plastic Mold, Inc. "This transfer was made in good faith." On November 1, 1946, M. & L. Plastics, Inc., was organized by Joseph B. Marshall, Hannah Marshall, and Robert S. Leers. The judge stated that he was "not satisfied that this corporation was organized to defraud the

creditors of" the organizers. Hannah Marshall deeded the property at 12 Elwood Drive, Springfield, to Lottie J. Joffee on October 11, 1947. The conveyance was for a valuable consideration and there was no intent to defraud creditors. The "defendants did not conspire at any time to defraud, delay or defeat the creditors of the various corporate defendants or individual defendants."

A final decree was entered on March 21, 1952, dismissing the bill as against all the defendants except Joseph B. Marshall, Hannah Marshall, Ellis Marshall, and City Tool & Die Co., Inc., and directing the plaintiff (*sic*) to pay the defendants' costs amounting to $17.50. A second "final decree" was entered on April 9, 1952, whereby the indebtedness of the four principal defendants to the plaintiffs was established in the sum of $80,000 with interest and the indebtedness of Ellis Marshall to the plaintiffs was established in the sum of $720. Costs to the plaintiffs were awarded in the amount of $17.50. The plaintiffs appealed from the first decree.

The entering of two so called final decrees was irregular but, as they appear to be final adjudications of separable controversies, we may treat them as constituting a single final decree. *Monotype Composition Co. Inc.* v. *Kiernan,* 319 Mass. 456, 458, 461. See *Kennedy* v. *Shain,* 288 Mass. 458, 460; *Kingsley* v. *Fall River,* 280 Mass. 395. The plaintiffs' appeal brings here only that part of the decree to which obviously it is directed. As the evidence is reported all questions of law and facts are open for decision. *Lowell Bar Association* v. *Loeb,* 315 Mass. 176, 178. The record contains many pages of testimony and a large number of exhibits in the form of checks, conveyances, and corporate records. The purpose and intent of the participants in the various transactions must be determined from oral testimony, in appraising which the trial judge had the advantage of observing the witnesses in person. With few exceptions all of this testimony came from persons who could have been found to have had an interest in the outcome of the case. Hannah Marshall was the wife of Joseph B. Marshall

and Ellis Marshall was their son.  Muriel M. Leers was their daughter and Robert S. Leers was her husband. Louis H. B. Kaplan was the father-in-law of Ellis Marshall.

An examination of the evidence, both oral and documentary, does not convince us that the findings of the judge were plainly wrong.  We find that prior to the incorporation of the tool and die business Joseph B. Marshall conducted this business as an individual under the name of City Tool & Die Co.  Some of the money received by Marshall from the decedent probably was invested in the business in the form of supplies and equipment which became a part of the assets later taken over by City Tool & Die Co., Inc., on its incorporation.  Ellis Marshall was the sole owner of the stock of this corporation although Joseph B. Marshall retained an interest in the business.  The respective interests of Joseph B. Marshall and Ellis Marshall, whatever they may have been, were effectively ended by the foreclosure of the Kaplan mortgage which the judge found was first given and later foreclosed in good faith and not in fraud of creditors.  The subsequent transfer of the proceeds of the foreclosure by Kaplan to the newly organized Bay State Plastic Mold, Inc., concerned property in which neither of the Marshalls nor the City Tool & Die Co., Inc., retained any title.

We find that M. & L. Plastics, Inc., was organized by Robert S. Leers with money borrowed from members of his or his wife's family, the amount of $4,000 being lent to him by Hannah Marshall.  While all of the stock was originally issued to her, on January 7, 1948, it was transferred by her to Leers after the amount of money which Leers had borrowed had been substantially repaid.  The statement of the judge that he was "not satisfied that this corporation was organized to defraud . . . creditors" imports a finding that the plaintiffs had not sustained the burden of proving this fact.  *Golding* v. *108 Longwood Avenue, Inc.* 325 Mass. 465, 467.  He found that Mrs. Marshall did not know of the note to which her husband had signed her name until after the decedent's death in March, 1951.

The property at 12 Elwood Drive was the residence of Joseph B. Marshall and Hannah Marshall. On October 11, 1947, Mrs. Marshall conveyed the property to her sister Lottie J. Joffee. The evidence of consideration was vague but its reliability which depended on oral testimony was for the judge to determine. After the conveyance the Marshalls continued to live on the property. There was a first mortgage on the property of $6,700 and a second mortgage of about $5,500. The second mortgagee threatened to foreclose and Robert S. Leers with his wife took title to the property in January, 1951. He paid a substantial amount to the second mortgagee. Mr. and Mrs. Marshall continued to live there and Leers continued to pay off the mortgages. We think his intent was to maintain a home for his parents-in-law rather than to aid them in defrauding their creditors. Throughout the period with which the case deals, Joseph B. Marshall was in constant need of money. He borrowed continually from City Tool & Die Co., Inc., from M. & L. Plastics, Inc., from Leers, and from Kaplan. It does not appear that except on occasions he possessed assets to conceal from his creditors. The evidence does not show that after the Kaplan foreclosure Ellis Marshall had any assets. City Tool & Die Co., Inc., and Bay State Plastic Mold, Inc., seem to have discontinued business and to be without assets. The final decree is affirmed with costs of this appeal to the defendants who have appeared and answered.

*So ordered.*